IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RASUN ATON, | * | |
| Plaintiff, | * | |
| | | Civil Action No. 8:25-cv-02765-PX |
| v. | * | |
| TRIPLE CANOPY, INC., | * | |
| Defendant. | * | |

***

**<u>MEMORANDUM OPINION</u>**

Pending is Triple Canopy, Inc. ("Triple Canopy")'s Motion to Dismiss for failure to state a claim. ECF No. 13. The matter is fully briefed, and the Court needs no hearing. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is granted.

## I.   Background

Plaintiff Rasun Aton ("Aton") is a religious, African American male who was employed by Triple Canopy as an armed security guard between 2018 and early 2024. ECF No. 8-2 ¶¶ 6, 30.[1] At work, Aton had to wear a uniform and could not have facial hair unless medically necessary or for religious reasons. *Id*. ¶¶ 8–9. Throughout his employment, Aton consistently received satisfactory job performance reviews. *Id*. ¶ 7.

Aton avers that his "sincerely held religious beliefs" required him to maintain a full beard as "a sign of piety" and as "an integral component" of a nonspecific "religious practice." ECF No. 8-2 ¶ 10. Aton also suffers from chronic folliculitis—a medical condition that substantiality limits his ability to shave his neck and face. *Id*. ¶¶ 11–12. Since 2017, Aton has been under the care of Dr. Dwight F. King ("Dr. King") for this condition. *Id*. ¶ 11.

---

[1] The Amended Complaint is also separately filed at ECF No. 16. It is identical to the one at ECF No. 8-2 and so, the Court cites the earlier version for clarity.

On July 17, 2017, Aton submitted to Triple Canopy a medical accommodation request, drafted by Dr. King, that Aton be excused indefinitely from shaving because his folliculitis was chronic and incurable. ECF No. 8-2 ¶¶ 13–15. Aton resubmitted the medical request on August 21, 2021, January 5, 2023, and in March 2023 with updates. *Id*. ¶¶ 15, 52.

Around July 2017, Aton also asked to keep his beard as a religious accommodation. ECF No. 8-2 ¶ 16. Aton's religious leader, Abba Ioudah, requested that Aton be permitted to have a beard as a practice of his religion, although, the request does not specify which religion Aton practices. *Id*. ¶ 16. Aton subsequently resubmitted the request in August 2021 and on March 13, 2022. *Id*. ¶ 17.

About a year later, Aton asked about his accommodation requests. ECF No. 8-2 ¶ 18. Aton contends that Triple Canopy simply refused to "acknowledge or accommodate" his medical and religious accommodation needs but nonetheless accommodated other non-black employees with similar accommodation requests. *Id*. ¶¶ 18–19, 29.

Aton also contends that his supervisors, Allan Patterson and Jerry Saunders, "repeatedly questioned, ridiculed, and taunted" him about his beard. ECF No. 8-2 ¶ 20. Aton was also ridiculed for wearing his beard in a gathered manner, which is a tradition in his religion. *Id*. ¶ 21. In January 2023, Aton was sent home from work after being informed that his beard violated company policy. *Id*. ¶ 22. Aton was not formally written up but was prohibited from working two additional days due to this violation. *Id*. ¶¶ 23–24.

Five months later, Aton filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on June 1, 2023. ECF No. 8-2 ¶ 25. Thereafter, Aton alleges that the "verbal harassment" "continued and intensified." *Id*. ¶ 26. Supervisor, Paul Carruso, forcibly tugged on Aton's beard causing his head to jolt downward, while he mocked

2

Aton for having a beard. *Id*. ¶ 28. Further, Aton was issued "pretextual disciplinary write-ups" and removed from the work schedule. *Id*. ¶ 27. On February 12, 2024, Aton resigned due to the "discrimination and constant harassment" he experienced. *Id*. ¶ 30.

On April 12, 2025, Aton received a Notice of Right to Sue from the EEOC, and Aton then filed suit against Triple Canopy in state court. ECF No. 8-2 ¶ 31; ECF No. 2. After Triple Canopy noted timely removal and moved to dismiss the original complaint, ECF Nos. 1 & 5, Aton sought leave to amend, which the Court granted. ECF Nos. 8 & 15. The Amended Complaint asserts claims of disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.*; race and religious discrimination and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. and MFEPA; and retaliation and hostile work environment in violation of Title VII, the ADA, and MFEPA. ECF No 8-2. ¶¶ 33–139. Triple Canopy now moves to dismiss all counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. The Court considers the sufficiency of each claim below.

## II.     Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court must accept "the well-pled allegations of the complaint as true" and most favorably to the nonmovant. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The

court, however, need not credit naked legal conclusions devoid of factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Rather, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

With this standard in mind, the Court turns first to the disability discrimination claims.

## III.   Analysis

### A.  Disability Discrimination in Violation of the ADA and MFEPA (Counts I–II)

Aton alleges disability discrimination in violation of the ADA and MFEPA based on Triple Canopy's failure to accommodate his folliculitis. ECF No. 8-2 ¶¶ 33–56. Because MFEPA is the state statutory analogue to federal discrimination statues, the Court analyzes the claims together. *See, e.g.*, *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020) (analyzing MFEPA claim using the standard set forth in the ADA and related case law).

The ADA prohibits disability-related discrimination in the workplace, 42 U.S.C. § 12112(a), to include the failure to provide reasonable accommodations for disabled employees. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015). "Disability" under the ADA is "a physical or mental impairment that substantially limits one or more major life activities" such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(1) & (2)(A). Major life activities may also include, per federal regulations, "[t]he operation of a major bodily function, including functions of the . . . neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions . . . ." 29 C.F.R. § 1630.2. While "substantial limitation" must be construed broadly, the disability must be shown to "limit the ability of an

individual to perform a major life activity as compared to most people in the general population." *See id*. § 1630.2(j)(1)(i), (ii).

Triple Canopy argues the Amended Complaint fails to plausibly aver that it failed to accommodate Aton, because chronic folliculitis does not substantially limit Aton's "major life activities." ECF No. 13-1 at 8–9. "[W]hether a particular impairment constitutes a disability must be made on a case-by-case basis." *Tangires v. Johns Hopkins Hosp.*, 79 F. Supp. 2d 587, 594 (D. Md. 2006), *aff'd*, 230 F.3d 1354 (4th Cir. 2000) (citation omitted). But, "'whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" *Jacobs*, 780 F.3d at 572 (quoting Pub. L. No. 110–325, § 2(b)(5) (2008)). Congress has commanded that "the definition of disability 'shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms.'" *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) (quoting 42 U.S.C. § 12102(4)(A)). Nonetheless, the claim cannot survive on naked allegations of "disability." *E.E.O.C. v. Mfrs. & Traders Tr. Co.*, 429 F.Supp.3d 89, 104 (D. Md. 2019).

When viewing the Amended Complaint most favorably to Aton, he provides no detail as to the nature or severity of his condition so that the Court could plausibly infer his folliculitis qualifies as a disability. *See* ECF No. 8-2 ¶¶ 33–44. Rather, the Amended Complaint merely concludes that Aton's condition "substantially limits major life activities" because he cannot shave. *Id*. ¶¶ 35, 47. Without more, the Court cannot conclude the limitation on shaving is itself a substantial limitation on a major life activity. *Cf. Hill v. Verizon Maryland, Inc.*, No. CV RDB-07-3123, 2009 WL 2060088, at *7 (D. Md. July 13, 2009) (concluding plaintiff's obesity does not substantially limit major life activities where plaintiff is "able to walk, dress, cook, do laundry, care for himself hygienically, drive, run errands, and is able to work in a variety of jobs and capacities"); *see also*

5

*Kriegsmann v. FWC Residential Co.*, No. CV DKC 2005-2534, 2007 WL 9747428, at \*6–7 (D. Md. Sept. 4, 2007), *aff'd sub nom. Kriegsmann v. Firstworthy*, 268 F. App'x 244 (4th Cir. 2008) (concluding plaintiff's carpal tunnel syndrome did not substantially limit life activities because it did not prohibit plaintiff from "brushing his teeth, shaving, combing his hair, showering, bathing, dressing, putting on shoes, tying shoelaces, shopping for food, shopping for clothes" and "working in a broad range of jobs"). Accordingly, the disability discrimination claims (Counts I and II) are dismissed.

### B.      Discrimination Under Title VII and MFEPA (Counts III – VI & XI)

Turning to the discrimination claims,[2] the Amended Complaint broadly avers that Triple Canopy treated him differently than other similarly situated non-Black employees (Counts V and VI), and other similarly situated employees who did not hold his same "sincerely held religious beliefs" (Count III and IV). ECF No. 8-2 ¶¶ 57–96. In support, Aton obliquely avers that Triple Canopy granted disability accommodations to other non-black employees "without issue," and "refused to acknowledge or accommodate Plaintiff's religious practice." *Id*. ¶¶ 29, 76.

Title VII renders it unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent direct evidence of discrimination, the Court applies the burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff makes the prima facie case if any averred facts make plausible that: (1) the plaintiff belonged to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly

---

[2]As with disability discrimination, Title VII and its MFEPA analogue are analyzed together. *Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at \*18 (D. Md. Mar. 25, 2021)*; see also Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 211 (D. Md. 2025) (citing *Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 216 (4th Cir. 2016)).

situated employees who were not a member of his protected class received more favorable treatment. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). If the plaintiff makes that prima facie showing, the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for its conduct, *McDonnell Douglas Corp.*, 411 U.S. at 802, and then the burden returns to the plaintiff to show that the stated rationale is a pretext for discrimination. *See Foster v. Summer Vill. Cmty. Ass'n, Inc.*, 520 F. Supp. 3d 734, 742 (D. Md. 2021) (citing *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001)). Although at the pleading stage the plaintiff need not assert facts supporting every element of the prima facie case, some facts must allow the inference that he was treated adversely on account of a protected characteristic. *See McCleary-Evans v. Md. Dept of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

Triple Canopy argues that Aton fails to state a claim for disparate treatment because no facts make plausible any disparate treatment. ECF No. 13-1 at 6. The Court agrees. Although the Amended Complaint alleges Triple Canopy "has accommodated . . . other non-black employees' disability accommodation requests," ECF No. 8-2 ¶ 29, it offers no facts to support this legal conclusion. Mere denial of a request, without more, does not make plausible that the difference in treatment was on account of Aton's race or religion. *Cf. Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012) (affirming dismissal because "although Coleman's complaint conclusorily alleges that Coleman was terminated based on his race, it does not assert facts establishing the plausibility of that allegation."); *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (dismissal for failure to "allege facts sufficient to create a plausible inference that [plaintiff] was treated differently from similarly situated co-workers based on his race or gender."). Accordingly, Aton's claims for disparate treatment based on race and religion are dismissed.

Next, Aton alleges Triple Canopy failed to grant his religious accommodation (Count III–IV).  ECF No. 8-2 ¶¶ 57–78.  Under Title VII, "an employer has a 'statutory obligation to make reasonable accommodations for the religious observances of its employees, short of incurring an undue hardship.'"  *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).  To state a prima facie failure-to-accommodate claim, an employee must allege that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement."  *E.E.O.C. v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (citation omitted).

Triple Canopy argues the Amended Complaint fails to plead the existence of a bona fide religious belief.  ECF No. 13-1 at 7.  "The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task."  *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).  True, the Court must not "question the correctness or even the plausibility of [a plaintiff's] religious understandings."  *Consol Energy, Inc.,* 860 F.3d at 142 (citation omitted).  But at the same time, no employee is entitled to a "blanket privilege" such that they may make "unilateral decisions" about compliance with job requirements by simple invocation of sincerely held religious beliefs.  *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at \*4 (D. Md. Oct. 17, 2023) (collecting cases).  Ultimately, the matter turns on whether the plaintiff pleads a recognizable religious "scheme of things," *Welsh v. United States,* 398 U.S. 333, 339 (1970), rather than secular morality, personal health, convenience, preference, or whim, *see Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001)

8

("While an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences.") (citation omitted).

Again, when viewing the Amended Complaint facts most favorably to Aton, nothing makes plausible the existence of a bona fide religious belief. The Court tried mightily to discern *what* religion, if any, proscribes his "beard and act of growing a beard." *See* ECF No. 8-2 ¶ 16. Nonspecific allegations of  maintaining "a sincerely held religious belief" without facts to make that conclusory allegation plausible simply cannot suffice. *Id*. ¶ 58; *see also Twombly*, 550 U.S. at 555. While "it is not the Court's role to second-guess . . . [a] claimant's sincerely held religious views [n]or is it . . . to demand that a plaintiff justify [his] beliefs through a detailed theological account or scriptural exegesis[,]"  the pleading must minimally "identify a plaintiff's religion or explain how a plaintiff's objections are informed by a specific set of religious beliefs or practices." *Shigley v. Tydings & Rosenberg LLP*, 723 F. Supp. 3d 440, 449 (D. Md. 2024). Accordingly, because the Amended Complaint does neither, Aton's failure-to-accommodate claim will be dismissed.

Next, the Court turns to Aton's contention that Triple Canopy's mistreatment left him no reasonable alternative but to resign from his employment, thereby constituting constructive discharge (Count XI). ECF No. 8-2 ¶¶ 30, 133–139. To plead a constructive discharge claim, "the plaintiff must show something more than the showing required for a hostile work environment claim." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (citation omitted). To make plausible constructive discharge some facts must show the nature and severity of the discrimination that drove plaintiff "'to the point where a reasonable person in h[is] position would have felt compelled to resign' and that [he] actually resigned." *Id*. (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). Courts look to "the frequency of the conditions at issue," and "[t]he more continuous

the conduct, the more likely it will establish the required intolerability." *Evans,* 936 F.3d at 193 (citation omitted). Further, "difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign." *Id*. Whether a resignation was, in fact, a constructive discharge depends on "the totality of the circumstances." *See Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413 (4th Cir. 2010).

When viewing the complaint facts most favorably to Aton, he avers that at some point he was subjected to "verbal ridicule and taunting" as well as "disciplinary write-ups." ECF No. 8-2 ¶¶ 27, 115, 126. But he offers little detail as to the extent, degree, nature or duration of any such incidents. *Cf. Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017) ("Mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.") (citation omitted). As for the allegation that his supervisors had "physically assaulted" him by "forcibly tugging on his beard," this event cannot reasonably be found to have prompted a constructive discharge because Aton continued to work at Triple Canopy for approximately eight more months. *Cf Dabney v. Kershaw Cnty.*, No. CA 3:11-666-JFA-PJG, 2013 WL 1206284, at *5 (D.S.C. Jan. 15, 2013), *report and recommendation adopted*, No. 3:11-CV-00666-JFA, 2013 WL 1206203 (D.S.C. Mar. 25, 2013) (dismissing constructive discharge claim where plaintiff, who was physically assaulted, gave two weeks' notice and continued to work up to her effective retirement date). Nor does the claim succeed because Aton conclusorily states that the harassing conduct "continued" or "intensified." ECF No. 8-2 ¶¶ 26, 30, 103, & 110. Naked conclusions devoid of facts cannot sustain the claims. *Twombly*, 550 U.S. at 555, 557. The constructive discharge claim must be dismissed.

10

C.      Retaliation Under Title VII, theADA, and MFEPA (Counts VII & VIII)

The Court next addresses the retaliation-based claims brought under Title VII, the ADA, and MFEPA. ECF No. 8-2 ¶¶ 97–110. To survive dismissal for any such claim, the Amended Complaint must make plausible that: (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) a causal relationship exists between the two. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019) (citation omitted); *see also Laird v. Fairfax Cty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020) ("[a]lthough [the plaintiff's] case involves claims under the ADA, we treat the Title VII context as being 'analogous' to the ADA for this purpose"). A sufficiently "adverse" action for retaliation is one that "dissuade[s] a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (citation omitted). Causation may be inferred when the adverse action follows close in time to when the employer first becomes aware of the protected activity. S*ee Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021). Some facts, however, must show that "the relevant decisionmaker" was "'actually aware of the protected activity'" at the time the alleged retaliation occurred. *Johnson v. Baltimore City*, Maryland, 163 F.4th 808, 820 (4th Cir. 2026) (quoting *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025)).

Triple Canopy contends that no facts make plausible any causal connection between the alleged adverse treatment and Aton's protected activity. ECF No. 13-1 at 9–10. Triple Canopy is correct. The Amended Complaint obliquely alleges Aton filed his EEOC Charge, and then received pretextual disciplinary write-ups and other adverse treatment. ECF No. 8-2 ¶¶ 27–28. The problem for Aton is the Amended Complaint makes no effort to show how those who took such adverse actions *knew* about the protected activity. *See Gatebe v. Nelson*, No. 22-2127, 2024

WL 937079, at *3 (4th Cir. Mar. 5, 2024) (finding a plaintiff must show the relevant decisionmaker was aware of the plaintiff's protected activity at the time the alleged retaliation occurred). But because Aton includes no details about whether the persons who issued the writeups or engaged in the alleged adverse actions even knew about his EEOC Charge, the pleading fails to make plausible any causal connection between the two. The claims, therefore, must be dismissed.

### D. Hostile Work Environment (Counts IX and X)

Lastly, the Court turns to the sufficiency of the hostile work environment claims under Title VII, the ADA, and MFEPA. For a hostile work environment claim to survive challenge, some facts must make plausible that the plaintiff (1) experienced unwelcome conduct, (2) that was imputable to the employer, (3) that the conduct was aimed at a protected characteristic, and (4) was sufficiently severe and pervasive to alter the conditions of her employment. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015); *Evans*, 936 F.3d at 192. Whether the work-place harassment was sufficiently severe or pervasive depends on the "totality of the circumstances," *Spriggs*, 242 F.3d at 184, considering "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with the employee's work performance." *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

When viewing the facts most favorably to Aton, the hostile work environment claim fails. To make plausible the claim, the Amended Complaint concentrates on Aton's supervisor "tugging on his beard," sending him home from work, prohibiting him from working additional dates, and verbally ridiculing and taunting him. ECF No. 8-2 ¶¶ 111–132. Even assuming that the adverse conduct had been based on Aton's race, religion, or disability, the conduct is too nonspecific to

make plausible an alteration of the conditions of employment.  *See Boyer-Liberto*, 786 F.3d at 272.

Generally, "isolated incidents (unless extremely serious)  will not amount to discriminatory

changes in the terms and conditions of employment." *Sunbelt Rentals*, Inc., 521 F.3d at 315 (citing

*Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)).  Because the pleading offers no details about

where, when, how often, and under what circumstances Aton was mistreated, the claims cannot

survive.  They too are dismissed.

## IV.     Dismissal With or Without Prejudice

The Court retains broad discretion in dismissing claims with or without prejudice.  *See*

*Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013).  Dismissal with prejudice is

justified where, as here, Aton was already alerted to the pleading defects through Triple Canopy's

motion to dismiss the original complaint, ECF No. 5, and nonetheless failed to cure those defects.

ECF No. 8-2.  *See Glover v. Loan Science, LLC*, Civ. No. PWG-19-01880, 2020 WL 3960623, at

*3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th

Cir. 2013)).  The Court sees no good grounds to allow a third bite at the apple.  The Amended

Complaint is dismissed with prejudice.

## V.     Conclusion

For the foregoing reasons, the Court grants Triple Canopy, Inc.'s Motion to Dismiss (ECF

No. 13) with prejudice.  A separate Order follows.


    07/29/2026                                             /s/
Date                                             Paula Xinis
                                                 United States District Judge

13